Citation Nr: 1518729 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 09-41 628 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to service connection for hypertensive vascular disease.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

K. R. Fletcher, Counsel



INTRODUCTION

The Veteran had active service from February 2005 to July 2007. 

This matter is before the Board of Veterans' Appeals (Board) from an August 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. Jurisdiction of the case was subsequently transferred to the RO in Atlanta, Georgia. In October 2014, the Board remanded the issue on appeal for further development.

This appeal was processed using the Veterans Benefits Management System (VBMS).


FINDING OF FACT

The most credible and competent evidence of record does not support the conclusion that hypertensive vascular disease had its onset in service or within one year of service discharge or is otherwise etiologically related thereto. High blood pressure associated with preeclampsia in service resolved at the end of pregnancy.


CONCLUSION OF LAW

Hypertensive vascular disease was not incurred in or aggravated by the Veteran's military service, and may not be presumed to have been. 38 U.S.C.A. §§ 1110, 1112, 1113, 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist 

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a).

Proper notice from VA must inform the claimant and his or her representative, if any, prior to the initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ) of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). These notice requirements apply to all five elements of a service-connection claim (veteran status, existence of a disability, a connection between the veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id. 

Neither the Veteran nor her representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. The Veteran was notified via letter dated in May 2008 (prior to the initial adjudication of the claim in August 2008) advising her what the evidence must show and the respective duties of VA and the claimant in obtaining evidence, as well as the appropriate notice with respect to the disability-rating and effective-date elements of the claim. 

VA's duty to assist has also been met. The Veteran's pertinent medical records, to include service treatment records (STRs) and identified, available post-service treatment records have been obtained. The Veteran has not identified any pertinent, outstanding records that could be obtained to substantiate her claim. The Board is also unaware of any such records. 

In its 2014 Remand, the Board requested that the AOJ obtain outstanding treatment records and a VA medical opinion addressing the nature and etiology of the Veteran's recently diagnosed hypertension. Accordingly, the outstanding VA treatment records were requested and obtained. The Veteran was then afforded the appropriate VA examination for her hypertension claim in December 2014. The report of this VA examination, along with a February 2015 addendum, indicate that the examiner reviewed the Veteran's past medical history and claims file, recorded her current complaints, conducted appropriate evaluation, and provided the information necessary to evaluate her claimed disability. The Board concludes that this examination report and addendum are adequate for the purpose of rendering a decision as to the Veteran's hypertension in the instant appeal. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

VA's duties to notify and assist are met. Accordingly, the Board will address the merits of the claim.

II. Service Connection 

A. Law and Regulations

Under the relevant law and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110. Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).

Certain chronic diseases, such as hypertension, are subject to presumptive service connection if manifest to a compensable degree within one year from separation from service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 

Under 38 C.F.R. § 3.303(b) , an alternative method of establishing the second and third Shedden/Caluza elements is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a). Hypertension is a qualifying chronic disease. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As a result, service connection via the demonstration of continuity of symptomatology is applicable in the present case.

Regulations also provide that service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303(d). 

For VA purposes, the term "hypertension" means that the diastolic blood pressure is predominantly 90 mm. (millimeters of mercury) or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160 mm. or greater with a diastolic blood pressure of less than 90 mm. Hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. 38 C.F.R. § 4.104, Diagnostic Code 7101, Note (1).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The Board has thoroughly reviewed all the evidence in the Veteran's VBMS file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on her behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. 

B. Factual Background and Analysis

The Veteran seeks service connection for hypertension, stating that she had been diagnosed with hypertension during service. However, her medication was discontinued by Dr. AS in favor of treatment with diet and exercise. Hypertension medication was later resumed by her VA medical providers in 2014. See statements received in January and October 2008, and June 2014.

STRs for the Veteran's period of active duty from February 2005 to July 2007 reveal multiple elevated blood pressure readings. For example, in October 2005 blood pressure was 137/96, and she reported a history of having an elevated blood pressure. In April 2006, when being treated for knee pain, blood pressure was 130/94; in June 2006, when being treated for an allergic reaction, blood pressure was 125/93; in December 2006, when being treated for urinary tract infection, blood pressure was 121/90; and in March 2007, when being treated for a headache, blood pressure was 133/91. In July 2006, the Veteran reporting taking medication for hypertension and in May 2007, the Veteran reported a history of hypertension. July 2007 STRs note that the Veteran was taking Inderal to manage her blood pressure during pregnancy.

Following service, the Veteran gave birth to a baby in August 2007. Blood pressure readings obtained beginning in September 2007 were normal. Examiners noted that the Veteran had no essential hypertension.

A May 2008 VA compensation examination report notes current blood pressure readings of: 80/60 sitting; 100/70 recumbent; and 90/70 standing. The examiner reviewed the claims file but found no evidence of hypertension currently or in service. 

VA treatment records dated in 2009 note no diagnosis of or treatment for hypertension.

Treatment records from Dr. AS dated from 2009 to 2010 note that the Veteran reported a history of hypertension during pregnancy (2007). No diagnosis of or treatment for hypertension was noted from 2009 to 2010. In September 2010, Dr. AS specifically noted that the Veteran was not taking hypertension medication; examination revealed low to normal blood pressure.

A June 2014 VA outpatient treatment record notes that the Veteran was taking anti-hypertensive medication.

During a December 2014 VA examination, the Veteran reported being diagnosed with hypertension in 2006. She stated that she was prescribed medication, which she took throughout her pregnancy in 2007. After her son was born, she lost 50 pounds and was taken off the medication. Current examination revealed high blood pressure, for which the Veteran was taking medication. After reviewing the claims file, the VA examiner opined that the hypertension was less likely than not (less than 50% probability) incurred in or caused by service. In this regard, the examiner stated that there was no documentation of a diagnosis of hypertension in the STRs. The examiner acknowledged that the Veteran had multiple elevated blood pressure readings in service, but explained that these findings occurred when she voiced other complaints, (such as migraine headaches) which would increase blood pressure at that particular time. The examiner, noted, however, that some records were not available for review as they had not yet been associated with the VBMS file.

A February 2015 addendum opinion to the December 2014 VA examination report notes that the VBMS file was again reviewed after all outstanding records were associated with the file. The examiner opined that current hypertension was less likely than not (less than 50% probability) incurred in or caused by service. In this regard, the examiner again noted the lack of documentation of a diagnosis of hypertension or treatment for hypertension in service. The examiner also noted that the Veteran had reported being diagnosed with hypertension and being prescribed blood pressure medication during pregnancy in service. However, the examiner stated that review of the VBMS file failed to show any such diagnosis of hypertension. Notably, STRs dated 01/05/2007, 12/07/2006, 12/13/2006, 05/11/2006 and 10/14/2005 (among numerous others) state that the Veteran's history of hypertension was negative.

As noted above, the evidence clearly shows that the Veteran took medication during her in-service pregnancy to manage her blood pressure. However, the medical evidence also shows that once the Veteran's pregnancy ended, her blood pressure normalized and she no longer required medication to manage her blood pressure. It was not until 2014, seven years after service and giving birth, that post-service treatment records and examination reports show a diagnosis of hypertension. 

Regarding the etiology of this hypertension, there is no objective indication of in-service incurrence of hypertension. While STRs show that the Veteran was treated for preeclampsia during her pregnancy, STRs are completely unremarkable for any complaint, treatment, or clinical diagnosis of hypertension outside of pregnancy during active duty military service, as noted above. 

Full consideration has been given to the Veteran's assertion that her hypertension first manifested in service or within one year of her service discharge. However, multiple clinical records do not support this assertion. Again, the Veteran's preeclampsia resolved after pregnancy. Thereafter, the first recorded diagnosis of hypertension is not until 2014, nearly seven years after service. Thus, in sum, the record fails to show by objective evaluation that the Veteran manifested any hypertension to a degree of 10 percent by July 2008 (within the first year following her active duty service discharge in July 2007). 

Consideration has also been given to the Veteran's contention that her hypertension is related to her active service. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, cardiovascular disorder, including hypertension, fall outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). Hypertension is not the type of condition that is readily amenable to mere lay diagnosis or probative comment regarding its etiology, as the evidence shows that blood pressure readings and other specific findings are needed to properly assess and diagnose the disorder. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); and Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). 

That is, there is no indication that the Veteran is competent to etiologically link her current diagnosis of hypertension to any symptoms she may have experienced in service. The Veteran has not been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that the Veteran received any special training or acquired any medical expertise in evaluating cardiovascular disorders. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). Accordingly, this lay evidence does not constitute competent medical evidence and lacks probative value.

The Board has also considered the doctrine of reasonable doubt but has determined that it is not applicable to this claim because the preponderance of the evidence is against the claim.


ORDER

Service connection for hypertensive vascular disease is denied.



____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs